AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | FILED _____ LODGED |
|---|---|
| | _____ RECEIVED |
| | **Apr 25, 2022** |
| | CLERK U.S. DISTRICT COURT |
| | WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| | BY _____ DEPUTY |

In the Matter of the Search of                )
*(Briefly describe the property to be searched*         )
*or identify the person by name and address)*         )      Case No.   MJ22-5061
Subject, Residence, and Two Vehicles, more fully     )
described in Attachments A-1 to A-4              )
                                                    )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Subject, Residence, Vehicles as described in Attachments A-1 to A-4, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Prohibited Person in Possession of Firearm; |
| 18 U.S.C. § 922 (a)(6) | False Statement in Connection with Acquisition of a Firearm; |
| 18 U.S.C. §§ 924(a)(1)(A) and 911 | False Statement to Federal Firearms Licensee; False Claim to United States Citizenship |

The application is based on these facts:

✔ See Affidavit of FBI Task Force Officer Jordan Vossler, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or; ☐ telephonically recorded.

_____
*Applicant's signature*

Jordan Vossler, Task Force Officer, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ___04/25/2022___

_____
*Judge's signature*

City and state: Tacoma, Washington

J. Richard Creatura, United States Chief Magistrate Judge
*Printed name and title*

USAO: 2021R01432

# A F F I D A V I T

STATE OF WASHINGTON    )
                       )    ss
COUNTY OF CLARK        )

I, Jordan Vossler, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Deportation Officer with the U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) and have been since September 2015. I have been employed by the Department of Homeland Security for approximately 11 years and am currently stationed in Portland, Oregon. I previously served as an Immigration Enforcement Agent from February 2011 to September 2015. I am currently assigned to the Criminal Alien Program (CAP) where I am responsible for conducting administrative and criminal investigations into possible violations of the federal law with an emphasis on immigration law. I am also collaterally assigned to the Federal Bureau of Investigations (FBI) Safe Streets Task Force in Vancouver, Washington where I am responsible for conducting criminal investigations involving, but not limited to, violent crimes, firearm offenses, transnational gangs and narcotics trafficking. As part of this assignment, I have received Special Deputation with the Department of Justice as an FBI Task Force Officer. My training and experience include graduating the ICE DRO Basic Immigration Enforcement Academy in 2011, completing the ICE Field Operations Training Program in 2015, and completing the Field Operations Training Program-Prosecutions Module in 2019 at the Federal Law Enforcement Training Centers in Glynco, Georgia and Charleston, South Carolina. I have also assisted with the service of multiple search warrants with state and local law enforcement agencies as well as with the FBI, Drug Enforcement Administration (DEA), and Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF).

//

Affidavit of Jordan Vossler - 1
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

2.      I make this affidavit in support of an application for a search warrants for 3214 NE 62nd Ave, Apt J-6, Vancouver, Washington, 98661 (hereinafter referred to as the "**Target Premises**"), two vehicles associated with the **Target Premises**, and the person of **Joao Ricardo DeBorba**. The location to be searched is described in further detail in Attachment A-1, and the vehicles to be searched are described further in Attachment A-2 and Attachment A-3. As discussed herein, there is probable cause to believe that the premises, vehicles, and person to be searched contain evidence, as further described in Attachment B, of violations of 18 U.S.C. §§ 911 (false claim to US citizenship), 922(a)(6) (false statements in connection with the acquisition of a firearm), and 922(g) (prohibited person in possession of a firearm), and 42 U.S.C. § 408(a)(7)(C) (possession of a social security card with intent to alter), committed by **Joao Ricardo DeBorba**.

3.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## THE INVESTIGATION

### DeBorba's Entry to the United States and Citizenship Status

4.      In August of 2021, I received information that **Joao Ricardo DeBorba** was arrested for charges involving domestic violence and a violation of a no contact order in Clark County, Washington. This referral stated that **DeBorba** was an undocumented immigrant. My review of immigration records indicate that **DeBorba** entered the United States on or about November 10, 1999, via the Miami (Florida) International Airport,

Affidavit of Jordan Vossler - 2
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

using a nonimmigrant B2 visitor visa. When entering on that date, **DeBorba** provided his Brazilian Passport (no. xxxxx642) stating he was a citizen of Brazil. He was admitted to the United States for a period of up to six months, requiring him to depart the United States on or before May 9, 2000.

5.     Based on my investigation of Department of Homeland Security immigration records, there is no record of **DeBorba** ever departing the United States or applying for an extension of stay, and it appears he overstayed his visa and is in violation of section 237(a)(1)(B) of the Immigration and Nationality Act. There is also no record in any immigration database of **DeBorba** ever receiving permission to legally remain in the United States or any other legal entry at any time after November 10, 1999. I have also obtained a copy of **DeBorba's** current Brazilian passport, which states that he was born in Joinville, Santa Catarina, Brazil. and listed him as a national of Brazil. This passport appears to have been issued in Boston, Massachusetts on January 24, 2018, and is due to expire on January 23, 2028. Information from a Brazilian official also confirms this passport is valid and in their system.

### DeBorba's Social Security Card Application and Claims to U.S. Citizenship

6.     I have learned from Special Agent Scott Jones with the Social Security Administration, Office of Inspector General, that **DeBorba** was issued Social Security number (SSN) xxx-xx-1075 on January 17, 2001, by the Social Security Administration's Ogden, Utah Field Office. I have reviewed the Application for a Social Security card submitted by **DeBorba** in obtaining that Social Security number. The application is signed by **DeBorba**, and states he was born in Joinville, Santa Catarina, Brazil. Also, on the "citizenship" question, the box is checked stating that **DeBorba** was a "Legal Alien Not Allowed To Work." The application indicates that, in support of this application, **DeBorba** provided his previously mentioned Brazilian passport, an I-94 entry document for a B2 visitor visa, and a "DMV" letter. There is no record in immigration databases of the I-94 document under the number **DeBorba** provided, and I believe it to be a fraudulent document presented in order to obtain a Social Security number. Based on this

Affidavit of Jordan Vossler - 3
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

application, **DeBorba** was issued a Social Security number bearing the notation, "NOT VALID FOR EMPLOYMENT." No other replacement card was issued. I believe this Social Security card was most likely issued in order for **DeBorba** to obtain state, federal, and/or other benefits, and Special Agent Jones stated it was likely issued in error since a person with a B2 visa is not authorized to work in the United States and such a document is generally not used for establishing eligibility for a Social Security number, nor does a driver's license constitute a valid nonwork reason for assigning a Social Security number.

7.      I have reviewed an image of **DeBorba's** Social Security card. The card bears the notation, "NOT VALID FOR EMPLOYMENT" above the Social Security number, which is over the Social Security Administration seal.

8.      I have obtained copies of **DeBorba's** I-9 Employment Eligibility Verification forms used in connection with his employment with JC Custom Machining & Design, Inc., and A-1 Precision, Inc. On the I-9 form, the applicant is asked to attest, under penalty of perjury, to his or her citizenship status. On both forms, which bear **DeBorba's** signature, the box is checked next to "A citizen of the United States." The supporting documentation for the I-9 relating to JC Custom Machining & Design, Inc. shows **DeBorba** submitted a Massachusetts driver's license and a social security card bearing what appears to be Social Security number xxx-xx-1075. Notably, the Social Security card does not bear the notation "NOT VALID FOR EMPLOYMENT." Further, the card does not bear the seal of the Social Security Administration, which is the agency that issues Social Security cards, but rather, it bears the seal of the Department of Health and Human Services. The supporting documentation for the I-9 form relating to A-1 Precision, Inc. (dated June 10, 2019) shows **DeBorba** submitted a Washington driver's license and another Social Security card bearing SSN xxx-xx-1075 and the seal of the Social Security Administration, but without the "NOT VALID FOR EMPLOYMENT" notation. The area of the card where the notation is supposed to be (over the upper portion of the seal) appears to have been blurred or erased, indicating the card was altered to remove the "NOT VALID FOR EMPLOYMENT" disclaimer.

Affidavit of Jordan Vossler - 4
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

9.      Information provided by Special Agent Mazzuca with the Federal Aviation Administration revealed that **DeBorba** attempted to get a student pilots license in Massachusetts. On or about March 19, 2014, and April 12, 2015, he stated he was a citizen of Brazil on official government document FAA Form 8500-8.

**DeBorba's Purchases and Possession of Firearms**

10.      On February 25, 2019, **DeBorba** applied for a Concealed Pistol License in the state of Washington. I have obtained a copy of the Concealed Pistol License Application signed by **DeBorba**, which states that he was born in Joinville, Santa Clara, Brazil. Next to the question, "Are you a United States citizen?" the box is checked "Yes." Next to the questions, "Are you a permanent resident alien?" and "Are you a legal alien temporarily residing in Washington?" the boxes are checked "No." The space provided on the form for the entry of the applicant's alien registration/I-94 number was left blank. (This CPL was revoked by the Clark County Sheriff's Office on or about November 13, 2020, due to **DeBorba's** domestic violence convictions in October 2020.)

11.      I have obtained Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) firearms tracing information related to **DeBorba's** possession of a number of firearms. According to an ATF Firearms Transaction Record (Form 4473), on March 23, 2019, **DeBorba** purchased a Savage Arms model M11 rifle from a Sportsman's Warehouse in Portland, Oregon. The Form 4473 bears **DeBorba's** signature, and under question 12.a., entitled, "Country of Citizenship," the box next to "United States of America" is checked. The form also provided the answer "No" to questions 12.c. and 12.d.1., which read, "Are you an alien illegally or unlawfully in the United States?" and "Are you an alien who has been admitted to the United States under nonimmigrant visa?" In addition, the space that directs an alien to provide their admission number (I-94) was left blank.

12.      On April 4, 2019, as documented in another Form 4473, **DeBorba** purchased a Sig Sauer model 1911 .45 caliber pistol from a Cabela's store in Lacey, Washington. The Form 4473 for the transaction bears **DeBorba's** signature, again

Affidavit of Jordan Vossler - 5
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

13.    On April 13, 2019, as documented in a Form 4473, **DeBorba** purchased a KelTec model Sub-2000 .40 caliber rifle from Fast Cash Inc. in Lebanon, Oregon. The Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

14.    On April 14, 2019, **DeBorba** was arrested by the Washington State Patrol (WSP) in Vancouver, Washington for Driving Under the Influence. At that time, **DeBorba** was in possession of a Glock 26 pistol and his Concealed Pistol License, though he initially denied to the arresting officer that he had a firearm. According to ATF firearms tracing information, this Glock 26 pistol (serial number BGBU719) was originally sold as a Glock 26 "receiver" (a firearm part) in July 2018 in a sale to a private party. The Form 4473 for this transfer indicates the sale was made by a federally licensed firearms dealer in El Paso, Texas, to a Texas residence, but trace information provides no record of subsequent transfers of the receiver, or the assembled firearm made from the receiver. It is unclear at this time how or when **DeBorba** obtained the Glock 26 pistol, which is currently in the custody of the WSP.

15.    On April 20, 2019, as documented in a Form 4473, **DeBorba** purchased a Century Arms model RAS47 7.62 caliber rifle from Keith's Sporting Goods in Gresham, Oregon. As before, the Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

16.    On May 8, 2019, as documented in a Form 4473, **DeBorba** purchased a Rock Island Armory model M200 .38 Special caliber revolver from Brass Tacks Munitions in Vancouver, Washington. Once again, the Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of

//

Affidavit of Jordan Vossler - 6
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

**Issuance of Domestic Violence No-Contact Orders and Violations of Terms**

17.     On November 10, 2019, **DeBorba** was arrested in Vancouver, Washington by the Vancouver Police Department (VPD) for assaulting his wife. On November 12, 2019, a Domestic Violence No-Contact Order was issued by the District Court of Washington for the County of Clark, restraining **DeBorba** from, among other things, harassing, stalking, threatening, assaulting, or causing bodily injury to his wife, and prohibiting **DeBorba** from possessing any firearms and ordering him to immediately surrender any firearms in his possession. The order was issued in open court with **DeBorba** present, and bears his signature acknowledging receipt of the order. On November 14, 2019, a replacement Domestic Violence No-Contact Order which allowed for third-party contact between **DeBorba** and his wife regarding child visitation and for electronic communication between **DeBorba** and his children, but kept the same terms regarding firearm possession. **DeBorba** was again present and acknowledged receiving a copy of the order by signing.

18.     On or about November 16, 2019, the VPD arrested **DeBorba** at his residence in Vancouver, Washington (the **Target Premises**) for violations of the Domestic Violence No-Contact Order, and, during the arrest, seized approximately twenty firearms along with other firearm parts and ammunition from **Target Premises** which he had failed to surrender as required under the Order. These firearms included the Savage Arms, Sig Sauer, KelTec, Century Arms, and Rock Island Armory firearms mentioned above, and are currently in the possession of VPD for safekeeping. Also among the items seized were an AR-15 type rifle along with two AR-15 upper receivers (firearm parts used to assemble AR-15 type rifles). These firearms were located in a locked safe at **Target Premises** and **Deborba** provided the combination to police in order to access the firearms.

//

Affidavit of Jordan Vossler - 7
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## Evidence of Continued Acquisition or Possession of Firearms

19.     In August of 2021 a confidential source provided me with evidence of **DeBorba** operating and firing a firearm, again in violation of the November 14, 2019, Domestic Violence No-Contact Order. The evidence consisted of a video **DeBorba** posted on his Instagram social media account with the username rick_sky2020. In this video, **DeBorba** appears to be outdoors firing a black rifle with synthetic stock and large optical sight. The video provided appeared to be a recording of the screen of another phone, but due to the focus of the recording, the date, location and account name could not be clearly read. On February 1, 2022, I sought and obtained a federal search warrant for information contained in **DeBorba's** Instagram account. Among the items from the Instagram account was a video matching the one shown to me by the confidential source, which clearly shows **DeBorba** outdoors firing an AR-15 type rifle. Information from the Instagram account indicated that the video was taken on May 20, 2020, in Washougal, WA. This clearly violates the November 14, 2019, Domestic Violence No-Contact Order that **DeBorba** signed.

20.     The confidential source also provided information for **DeBorba's** YouTube Channel, titled "joao deborba," where, on March 22, 2019, **DeBorba** posted two videos of himself holding and operating a firearm at a firing range, This same source also stated that members of **DeBorba's** family have also observed him with firearms since the time VPD seized firearms from him.

21.     The two YouTube videos were titled, "7mm Brazilian Mauser Atirador de Elite" and "7mm Brazilian Mauser Atirador de Elite 2." I last viewed this page on April 13, 2022, and these videos were still posted. The video titles appear to be a description of the rifle that **DeBorba** is depicted firing in the videos, which is a bolt-action rifle with a wood stock. This appears to be consistent with the rifle being Brazilian-made Mauser type rifle chambered for a 7mm cartridge.

//

//

Affidavit of Jordan Vossler - 8
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

22.     As of March 9, 2022, the videos are accessible on the Internet via the URLs: "https://www.youtube.com/watch?v=L8mTKmYVuso" and "https://www.youtube.com/watch?v=5k4uIKZLXKY."

23.     On March 14, 2022, I obtained a search warrant for information associated with the above YouTube account. In response to the search warrant, I received from Google LLC (the parent company of YouTube) copies of the two videos I viewed on the YouTube website, as well as metadata associated with the videos indicating that they were created and published on March 23, 2019. Account information indicated that the account subscriber was **Joao DeBorba**, and that the user of the account has accessed the account using an Android mobile cellular device, which was earliest used to access the account on January 2, 2019, and most recently on March 13, 2022.

24.     On October 14, 2020, **DeBorba** was convicted of Assault in the Fourth Degree – Domestic Violence and two counts of Domestic Violence Court Order Violation in the Superior Court of the State of Washington, County of Clark, in case number 20-1-01294-06. In relation to that case, a new Domestic Violence No Contact Order was issued, which, among other things, again prohibited **DeBorba** from possessing any firearms and ordered him to immediately surrender any firearms in his possession. **DeBorba** was present and signed the order. The order expires on October 14, 2022.

**Continued Possession of Firearms at Target Premises**

25.     In April of 2021, police responded to an assault between **DeBorba** and his roommates at the **Target Premises**. At that time, both roommates stated that **DeBorba** still had firearms at the **Target Premises** and that **DeBorba** worked for a firearms retailer. These roommates stated that **DeBorba** was in possession of a bolt-action rifle. They also stated that he often carried the rifle in a backpack because it could be disassembled, and described it as a black rifle with a synthetic stock, gold barrel, and scope or similar optic. The roommates reported **DeBorba** was last seen with the rifle about four weeks prior to the incident. Since this time his roommates appear to have moved out and **DeBorba** is believed to live alone.

Affidavit of Jordan Vossler - 9
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

26.     Of note, **DeBorba's** last known employer, Brass Tacks Munitions located in Vancouver, Washington, also appears to be a munitions company, per their website. Further investigation revealed that they are/were also a firearm retailer and **DeBorba** has used this company for at least one known firearm purchase. As of January 20, 2022, the employer at Brass Tacks Munitions stated that he was still in contact with **DeBorba** and that **DeBorba** was volunteering on site. **DeBorba** is known to have worked as a machinist and has the ability to work on firearm parts. It appears this company now makes carbon fiber gun parts, including synthetic rifle stocks. As such, **DeBorba** would have had access to additional parts as well as the skills necessary to complete a full rifle.

**DeBorba's Links to the Target Premises**

27.     As of March 18, 2022, **DeBorba** was still living at the **Target Premises** according to the apartment manager. **DeBorba** has lived at the **Target Premises** since at least 2019 according to police reports and open-source database checks. Parking spot number 106 is assigned to **DeBorba**, and he currently drives a newer model dark blue Cadillac SRX which does not have license plates or a temporary tag. According to the apartment manager, this is a new car for **DeBorba**. I have observed this vehicle parked in spot 106 and also in the public parking area near the clubhouse of the apartment complex on multiple occasions since March 18, 2022, with paper dealership advertisement plates and no temporary tag in the rear window.

28.     **Deborba** has a history of driving vehicles that do not have the proper license plates or temporary tags placed in the window of the vehicle. His previous vehicle, a 2016 silver Nissan Frontier, was observed on multiple occasions between August of 2021 and approximately December of 2021 parked in spot 106 with Oregon license plate 867 JVS, which are registered to another male in Salem, Oregon. Further investigation into this vehicle on or about January 10, 2022, revealed that this vehicle's VIN (1N6AD0ER8GN788486), was registered in the state of Washington to **DeBorba** at the **Target Premises** and was supposed to have Washington License Plates C58251X,

//

Affidavit of Jordan Vossler - 10
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

1   which he failed to place on the vehicle. On January 21, 2022, the apartment manager also

2   confirmed this was **Deborba's** previous vehicle and that it was repossessed.

3       29.     On March 29, 2022, I observed a male matching **DeBorba's** Department of

4   Licensing photograph return to the **Target Premises** in a Cadillac SRX at approximately

5   3:45 p.m. On March 31, 2022, this vehicle was again located parked in **DeBorba's**

6   parking spot, number 106. At that time, the vehicle bore Washington State license plates

7   AAZ5287. According to Washington Department of Licensing records, these plates are

8   not associated with the Cadillac, but are instead for a 1995 Honda Accord sedan. Record

9   checks revealed that this Honda was previously registered to a **Ricardo DeBorba** and

10  was sold to another party on January 7, 2021. This vehicle is currently registered to

11  another party in Vancouver, Washington. **DeBorba** was again observed at approximately

12  6:40 a.m. on March 31, 2022, leaving the **Target Premises** driving the Cadillac with the

13  improper plates. On April 11, 2022, I observed the Cadillac parked on the street outside

14  of DeBorba's apartment complex, but it no longer had any license plates affixed.

15      30.     On the morning of April 15, 2022, **DeBorba's** vehicle was again observed

16  parked outside of the apartment complex. At that time, I was able to obtain the vehicle's

17  VIN (1GYEE63A140148060), which was visible from outside of the vehicle at the lower

18  driver's side windshield area. The vehicle bore a new Washington State temporary tag

19  (A4930956) that is now in the rear window of the vehicle. This temporary tag expired

20  April 8, 2022. Record checks reveal that this VIN and temporary tag are for a 2004

21  Cadillac SRX registered to **Joao DeBorba** at 3214 NE 62nd Ave, APT J6, Vancouver,

22  WA 98661.

23      31.     On April 19, 2022, I observed a new vehicle parked in **DeBorba's** assigned

24  parking spot 106 located at **Target Premises.** This vehicle, a newer model black

25  Mitsubishi Mirage G4 four-door sedan, still has the dealer advertised plates from Roger

26  Kehdi Mitsubishi on the vehicle and a temporary registration visible in the rear window

27  (D1217467) that expires on May 8, 2022. Further investigation of this temporary

28  registration did not reveal any record for Washington or Oregon, and it is unknown if it is

Affidavit of Jordan Vossler - 11
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

valid or fraudulent at this time. DeBorba's Cadillac SRX was also located on the same
day and time parked outside of the complex in the same spot as before with the expired
temporary registration in the rear window. On April 21, 2022, a male matching
**DeBorba's** Department of Licensing photograph was observed leaving the apartment
parking lot driving the black Mitsubishi sedan previously mentioned as parked in spot
106.

32.     Based on my training and experience, I believe **DeBorba** maintains
possession of firearms, firearms parts, ammunition, fraudulent immigration documents,
and fraudulent social security documents at the **Target Premises**, or in the vehicles he
uses. **DeBorba** has shown a pattern of intent to own and operate firearms despite court
orders prohibiting him from possessing firearms. He has shown a pattern of keeping them
at his apartment, as witnessed by his former roommates. Furthermore, he has lied and
committed fraud in order to possess firearms and evade prohibitions on nonresident aliens
possessing firearms.

**MOBILE DEVICES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

33.     In light of the fact that evidence in this investigation has taken the form of
information from the social media platform Instagram and the video sharing site
YouTube, which are both commonly accessed by mobile digital devices, and that
**DeBorba's** YouTube account appears to have been accessed using an Android mobile
device, this application seeks permission to search for evidence, in the form of
documents, including videos and images, that might be found in digital form on any
digital device, which may be kept at his residence, in his vehicles, or on his person. Thus,
the warrant applied for would authorize the seizure of electronic storage media, or
potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

34.     In my experience, it is very common for individuals involved in the use of
Instagram and YouTube to use mobile computing devices, such as a smartphone, which
are typically maintained at their residences and/or vehicles, when not on their person.
Further, based on my training and experience, I know that digital evidence associated

Affidavit of Jordan Vossler - 12
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

with mobile digital devices is oftentimes generated, maintained, and then forgotten about. Thus, stored information that one would think a prudent person would destroy because of their incriminatory nature are still possessed weeks or even months after the information came into the possession of the individual. I have participated in or know of the executions of search warrants where information of illicit conduct dating back many weeks, months, even years, has been found in computer hard drives or communication devices.

35.     Thus, the proposed warrant seeks authorization for the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). I submit that if a mobile digital device is located during the search of the **Target Premises**, there is probable cause to believe those records will be stored in that computer or electronic medium. Based on my knowledge, training, experience and information obtained from other agents, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a device can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools.

**Necessity of Seizing or Copying Storage Media**

36.     In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

//

Affidavit of Jordan Vossler - 13
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a.     <u>The time required for an examination</u>. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a device has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.     <u>Technical requirements</u>. Digital devices can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.     <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

**Nature of Examination**

37.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a device to human

Affidavit of Jordan Vossler - 14
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  inspection in order to determine whether it is evidence described by the warrant.

2      38.     As with any search warrant, I expect that this warrant will be executed

3  reasonably. Reasonable execution will likely involve conducting an on-scene

4  investigation of what devices must be seized or copied.

5      39.     The warrant I am applying for would permit law enforcement to obtain

6  from **Joao Ricardo DeBorba** the display of physical biometric characteristics (such as

7  fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to

8  search and seizure pursuant to this warrant. I seek this authority based on the following:

9          a.      I know from my training and experience, as well as from

10 information found in publicly available materials published by device manufacturers, that

11 many electronic devices, particularly newer mobile devices and laptops, offer their users

12 the ability to unlock the device through biometric features in lieu of a numeric or

13 alphanumeric passcode or password. These biometric features include fingerprint

14 scanners and facial recognition features. Some devices offer a combination of these

15 biometric features, and the user of such devices can select which features they would like

16 to utilize.

17         b.      If a device is equipped with a fingerprint scanner, a user may enable

18 the ability to unlock the device through his or her fingerprints. For example, Apple offers

19 a feature called "Touch ID," which allows a user to register up to five fingerprints that

20 can unlock a device. Once a fingerprint is registered, a user can unlock the device by

21 pressing the relevant finger to the device's Touch ID sensor, which is found in the round

22 button (often referred to as the "home" button) located at the bottom center of the front of

23 the device. The fingerprint sensors found on devices produced by other manufacturers

24 have different names but operate similarly to Touch ID.

25         c.      If a device is equipped with a facial recognition feature, a user may

26 enable the ability to unlock the device through his or her face. For example, Apple offers

27 a facial recognition feature called "Face ID." During the Face ID registration process, the

28 user holds the device in front of his or her face. The device's camera then analyzes and

Affidavit of Jordan Vossler - 15
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d.      In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e.      As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a

Affidavit of Jordan Vossler - 16
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   short time.

2        40.    Due to the foregoing, if law enforcement personnel encounter a device that

3   is subject to search and seizure pursuant to this warrant and may be unlocked using one

4   of the aforementioned biometric features, the warrant I am applying for would permit law

5   enforcement personnel to (1) press or swipe the fingers (including thumbs) of **Joao**

6   **Ricardo DeBorba** to the fingerprint scanner of the device; (2) hold the device in front of

7   the face of those same individuals and activate the facial recognition feature, for the

8   purpose of attempting to unlock the device in order to search its contents as authorized by

9   this warrant.

10                              **CONCLUSION**

11        41.    Based on the forgoing, I request that the Court issue the proposed search

12   warrant. This Court has jurisdiction to issue the requested warrant because it is "a court

13   of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a),

14   (b)(1)(A) & (c)(1)(A). Specifically, this Court is "a district court of the United States . . .

15   that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

16   Pursuant to 18 U.S.C. § 2703(g). Accordingly, by this Affidavit and Warrant, I seek

17   authority for the government to search the location specified in Attachment A, (attached

18   hereto and incorporated by reference herein) to the Warrant, and specifically to seize all

19   of the items that are identified in Attachment B.

20

21

22                              JORDAN VOSSLER, Affiant
                                Task Force Officer
23                              Federal Bureau of Investigation

24        The above-named agent provided a sworn statement to the truth of the contents of

25   the foregoing affidavit by telephone on the 25th day of April, 2022.

26

27

28                              J. RICHARD CREATURA
                                United States Chief Magistrate Judge

Affidavit of Jordan Vossler - 17
USAO# 2021R01432

1

### ATTACHMENT A-1

2

### (Premises to be Searched)

3      The premises to be searched (the **Target Premises**) is the residence located at

4  **3214 NE 62nd Ave, Apt J-6, Vancouver, Washington.** The **Target Premises** is an

5  apartment located on the second floor of a light green and tan colored building with a

6  large "J" on the outside. The apartment is in the northernmost alcove of the building and

7  is located on the south side of the second floor of the alcove. The apartment is marked

8  with a sign that says "J-6" on the wall of the alcove to the left of the door to the

9  apartment. Photographs of the exterior of and the door to the **Target Premises** are below.





Attachment A-1 -- Page 1
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A-2**

**(Vehicle to be Searched)**

The vehicle to be searched (the **Target Vehicle**) is a vehicle associated with the residence located at **3214 NE 62nd Ave, Apt J-6, Vancouver, Washington.** The **Target Vehicle** is a dark blue Cadillac SRX with VIN number 1GYEE63A140148060. A photograph of the **Target Vehicle** is below.



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A-3**

**(Vehicle to be Searched)**

The vehicle to be searched (the **Target Vehicle**) is a vehicle associated with the residence located at **3214 NE 62nd Ave, Apt J-6, Vancouver, Washington**, specifically, a black Mitsubishi Mirage G4 with temporary registration D1217467, provided the **Target Vehicle** is situated within the Western District of Washington. A photograph of the **Target Vehicle** is below.



Attachment A-3 -- Page 1
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A-4**

**(Person to be Searched)**

The person to be searched is Joao Ricardo DeBorba, born 09/09/1975, provided he is situated within the Western District of Washington. A photograph of the person to be searched is below.



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**(List of Items to be Searched for and Seized)**

This warrant authorizes the government to search for the following items:

Evidence and/or fruits of the commission of the following crimes: 18 U.S.C. §§ 911 (false claim to US citizenship), 922(a)(6) (false statements in connection with the acquisition of a firearm), and 922(g) (prohibited person in possession of a firearm), and 42 U.S.C. § 408(a)(7)(C) (possession of a social security card with intent to alter), including but not limited to the following:

1. Firearms, firearm parts, ammunition, and any firearms accessories, including firearm tools, cases, holsters, cleaning kits, and ammunition boxes, and any firearms safes.

2. Documents evidencing the ownership, receipt, or possession of firearms, including sales receipts, purchase and acquisition forms, registration information, concealed carrying permits, and any photos or videos depicting firearms, including documents and images in digital form and any associated metadata.

3. Social Security documents, including Social Security cards, whether or not authentic, and applications for Social Security cards or benefits.

4. Immigration documents pertaining the Joao Ricardo DeBorba, including passports, I94 or I9 forms, and documentation of date and/or place of birth.

5. Employment records, including paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

6. Indicia of occupancy, residency, and/or ownership of the **Target Premises** including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

7.     Cellular telephones and other mobile communications devices including Android phones, iPhones, or other smartphones may be seized, and searched for documents responsive to items 2-6 above, and any unique identifiers for the device, including serial numbers, phone numbers, user IDs, IMEI and IMSI numbers.

In searching for the above items, agents are authorized to forcibly breach any safe located on the Target Premises, after making reasonable efforts to open the safe by other means.

During the execution of the search of the premises described in Attachment A, law enforcement personnel are authorized to press the fingers, including thumbs, of Joao Ricardo DeBorba to sensors of devices found at the premises for the purpose of attempting to unlock the device via biometric authentication in order to search the contents as authorized by this warrant.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

If, after conducting its examination, law enforcement personnel determine that any digital device contains evidence responsive to the items to be seized listed above, or is an instrumentality of the criminal offenses referenced above, the government may retain that device during the pendency of the case as necessary to, among other things, preserve the instrumentality evidence for trial, ensure the chain of custody, and litigate the issue of forfeiture. If law enforcement personnel determine that a device does not contain such evidence and was not an instrumentality of the criminal offenses referenced above, it

shall be returned to the person/entity from whom it was seized within 60 days of the issuance of the warrant, unless the government seeks and obtains authorization from the court for its retention.

The seizure of digital devices or other electronic storage media and/or their components as set forth herein is specifically authorized by this search warrant, for the purpose of conducting off-site examinations of their contents for evidence of the aforementioned crimes.